We're starting a few minutes late. We apologize. We just got carried away in discussions of the law. So, we will be calling the first case momentarily. Before we call the first case, I would advise the attorneys that each side will have approximately 15 minutes to call the case. If both attorneys could step up and identify yourselves for the record. Case number 11-785, People v. Robert Kilner. Good morning, your honors. John Lovia on behalf of Ron Kliner. Good morning, your honors. Assistant State's Attorney Michelle Grimaldi Stein on behalf of the people of the state of Illinois. All right, good morning to both of you. Counsel, you may begin. Thank you, your honors. As I just mentioned, I represent Ron Kliner, a man who for nearly 20 years now has adamantly and vehemently insisted he has nothing to do with the crime for which he stands convicted. And we're here this morning because he seeks further testing on the physical evidence which could help him to show his which he would be entitled to due process of law and the opportunity heretofore denied him to make the case that the testing so far conducted also establishes his innocence. And I think I'm going to begin with the testing and that, of course, you begin with the statute. And Illinois has enacted a very broad statute that provides that if there is physical evidence that has the potential to establish new and non-cumulative evidence materially relevant to a man's innocence, then that testing should be permitted. And that statute reflects a legislative judgment that while finality of convictions is an important consideration and important value, science has much to offer. And in this case, there is physical evidence which if the testing broke in the way we hope and expect it would, could without a doubt have the potential to be new and non-cumulative. How is that since the 2003 test already showed that the hairs didn't belong to either the two-year defendant? Well, the 2003 test showed that a hair, the hair that was tested, shows it's not a hair that belongs to our client. And you could have made that argument at trial that none of the hairs belong to your client. Absolutely, but what we couldn't do is what science can now do. What science, the testing then was mitochondrial DNA, it is now advanced. Now we're talking about STR DNA testing where they can actually lift a profile from the hairs. So that profile can be uploaded into a database, a database that's expanding all the time, and can hit a match. It's one thing to be able to argue, well, it's not my hair on the victim. It's quite another thing to argue that evidence of struggle, I'll talk about in a minute, that not just this hair, but multiple hairs, possibly all of the hairs, belong to an individual and not just someone other than Ron Kleiner. Well, maybe you should get to the struggle, evidence of the struggle, because I think we'd like to know where you're getting that from. Well, Rinaldi himself, who of course is the main accuser, who saved his life, you know, a death penalty context, by implicating Kleiner, who has a motive to implicate someone other than himself. But Rinaldi himself claimed that it was supposed to be made to look like a robbery gone bad. But her purse was left on the car. Her purse was left on her person, and Parmanian, obviously the co-defendant, his testimony was that the purse was snatched from the victim's hand. So my colleague wants to assert that there was no evidence that the assailant was inside the car, but Parmanian himself says there was contact between the victim and the killer, because according to him, Kleiner supposedly took the purse from the hands of the victim. And then of course you have Mr. Appel, another person who supposedly implicates Kleiner. So what does the taking of the purse demonstrate? Well, the state's theory, as I read their briefs, is that this happened outside the car, there's no evidence that the killer was at all inside the car in a way that could have deposited hairs. But the state's main witness says no, there was in fact contact that would have taken place within the car between the person who's supposed to be Kleiner and the victim. And that's of course bolstered by the testimony of Mr. Appel, another witness against Mr. Kleiner with his own motives. Well, since the purse was left in the car, then that other testimony is questionable. Well no, I think that, Rinaldi said that it was supposed to be made to look like a robbery gone bad. So it was left in the car, but the killer was in the car, dumped the contents of the purse, and then left the car. So it actually dovetails perfectly to a conclusion that the killer would have been at some point inside the car. Mr. Appel's testimony was that Kleiner says that he grabbed the victim's hair, that there actually was a struggle within the car. So this is crediting the state's witnesses that there was a struggle within the car. Now that brings you to the hairs. It is possible, as the lower court assumed, that those hairs were picked up at the dry cleaners, that they belonged to five different people, they have nothing to do with this case. And if that's what the testing bears out, then that's not going to help Mr. Kleiner. But there is also a potential that those hairs, when tested, will show what, you know, the redundancy theory, that all of the hairs on the sweater vest, on the glove, on the other articles of clothing, belong to the same person. And under the case law, that becomes relevant because now you have a consistent hair, but it actually could go one step further. If that profile is uploaded into CODIS, it could hit a match. Now, a match in itself is not necessarily definitively exculpatory, but we don't know what that match could show. That match could be the real killer. It could be a person related to Parmanian. It could be someone unconnected to all of them with a history of killing people. And we cited in our reply brief the Hardin case and the Richardson case. Those are fact patterns where everybody thought they knew what happened. There were confessions, eyewitnesses, people are saying what happened. Then they hit a CODIS profile and what do you know? The killer had nothing to do with any of this. He was a serial killer in Hardin's case, and a rapist, and a totally different, unconnected to the theory that was presented at trial. We don't know if that's true because we don't know what the CODIS match could show. But then I go back to the statute. The statute says a potential for non-cumulative new evidence. We don't have to show what it's going to show because we don't know what it's going to show because Mr. Kleiner doesn't know who killed this woman, and we can't know until we do it. But what I'd urge your honors to conclude is in light of all this uncertainty, that the legislature said that when the science could potentially bear on the outcome, that you test. And Mr. Kleiner stands ready to pay for that test. And there is a long history of judicial reluctance to reopen cases that are closed. And that makes sense, going back decades, going back centuries. You know, guys like Mr. Kleiner that insists they're innocent would keep insisting until the end of time. But if the case was limited to, well, Paramanian's lying and Rinaldi had a motive, at some point you've got to close the courthouse door and say, look, you've had your chance to make these arguments and you've lost. Science changes the paradigm. Because there are things you can know to a scientific certainty. If that hair in the CODIS database hits a match that's relevant, we will know that. That's not speculation. That will become unknown and it has the potential to blow the case open. And again, the judicial branch doesn't have to make that judgment. The legislative branch already has. The legislative branch has said that if there is a potential for new non-cumulative evidence that's relevant, material and relevant to innocence, then you let the testing occur. Because on the flip side of it, why wouldn't we let the testing occur? I mean, if I had the answer in this piece of paper as to who that profile was, and if that profile matched someone that didn't fit the state's theory of the case, but that cast doubt on Kleiner's conviction, wouldn't you want to know that? Of course you'd want to know that. Why wouldn't you want to know that? So what is the harm to permitting this testimony? The only thing coming back the other way as well, you need finality. You've got to have finality. I would submit, as I already have, that science changes that paradigm. Because why have finality when science could tell us conclusively an answer? And if that answer is something as solid as scientific proof as to who left a number of hairs on the victim, then that's something that the court should want to know. And we would submit that it's extra, you know, another consideration is the context of the case. And that brings up the second point I wanted to argue this morning. And that is something that due process requires under case law precedent, the Dodd's case. Mr. Kleiner has never had the opportunity in the lower court to argue why the testing matters. To answer the question Justice Taylor asked is, who cares? You know, if we've already established that there was a hair and it wasn't yours, Mr. Kleiner wants to make the case and obviously he wants to supplement it with the further physical testing that I've suggested this morning. But he wants to be able to make a record that in light of the context of the case, in light of the weakness of the case, in light of the fact that he wasn't even arrested until five years after this murder happened, and that he was convicted largely on the testimony of a man who was trying to save his own life under the penalty of the death penalty. And two witnesses that he told that he killed the lady. One of the witnesses was his ex-girlfriend in a custody battle over the kid. You know, she didn't come forward for five years and she has motives and, you know, that's evidence. And it got him convicted. And we're not arguing the conviction anymore. He was convicted. But Mr. Kleiner says that that's not definitive. You know, the fact that an ex-girlfriend, five years after the fact, in a custody battle says, oh, he told me about a murder and kept silent. Same with the other witness who was a Chicago police officer who presumably would have had a reason to bring it up sooner. All we're saying is these are one person's word. There's no physical evidence connecting Kleiner to the crime. He has a very good alibi. It is not scientifically certain that he committed this crime. Whereas if you put on the other side of the scale the possibility that you could get scientific proof that there was someone connected to Parmenian other than Kleiner, then that's a potential you'd want to explore. Well, this isn't one of those, you know, eyewitness cases. True. But I want to ask you another question. The state points out that you argue the forensic evidence in this case showed that the victim came in close contact with her assailant or assailants. And that the shooter had contact with the victim's car and possessions. And then they point out that in violation of Supreme Court Rule 341, you make no record citation for your claim. What is your response to that? Well, I will respond in two parts, Your Honor. And the part about the purse being snatched from the victim's hands has a record cite. That's record 3195. Is that in the brief? It's in the brief. I'm quoting from the brief. All right. What page is it? Your Honor, I'm going to read the, with the court's permission, I'm going to read the record cite into the record that I pulled from the brief and then find where it is in the brief. It's probably in the reply. Oh. But the record cite that came from the brief. You know, you can't really do that with something in the reply brief. You didn't put it in your opening brief. But if you're conceding that's how you did it, fine. Is that what you did? Here's, well, my response is I don't know which brief it's in. I know it's in the brief. Okay. I know the site for the purse being snatched from the victim's hands is in the brief. And is that based on, is that based on Rinaldi's statement that it was supposed to make it look like a robbery gone bad? Or what record citation is it? That's Parmanian. Parmanian saying, yes. Saying that the victim, that he was told, supposedly by Kleiner, that he literally snatched the purse from the victim's hand. It's R3195 to 95 to 97. The short-range firing site is 37. Well, we know there was short-range firing. The struggle to grab the hair is A15 and R4220 to 22. And then the, there's evidence that the watch was taken from the victim, although it's not, you know, proof. But there's some suggestion that she had a watch and then didn't have it after the alleged robbery is 84 to 85. And my second response to your honor about the record site is that is precisely why we're asking for a hearing. That's the point is we're saying we want a hearing in which we can build a record as to why this is relevant. That's our second request for relief. Mr. Kleiner has not got a hearing. So to the extent that your honors or the state is troubled by the lack of a full record on why this matters, that's why we're here. No, we're just troubled by not citing the record for claims. That's, that's, my question was about following Supreme Court rules in a brief. And I hope I have made myself clear is that the reason we can't cite a record is because the whole point is no record, such record exists yet. We don't have a record. We want to go have a hearing at which we can make a record as to why the testing could be relevant. We anticipate putting in the affidavit that I mentioned a minute ago about from Mr. McCollum and Mr. Burnett who are going to testify, you know, that there was evidence that Harmanian actually had a different accomplice other than Kleiner, a guy who went by the nickname of Psycho who McCollum saw at a nightclub and that Rinaldi supposedly told this individual that his co-defendant was someone other than Kleiner, that his co-conspirator. And we don't have record cites for this because we haven't had our hearing yet. And that brings me to the second point. That's a different kind of question. Go ahead. Well, then I would like to reserve my remaining time for rebuttal and stand on our request for both the testing and the hearing. Unless there are further questions. Thank you. Good morning, Your Honors. Again, Michelle Grimaldi-Stein, Assistant State's Attorney and I represent the people of the State of Illinois. Your Honors, we have more than 40 volumes of record in this case. And these volumes and the multitude of proceedings that the defendant has litigated in this case demonstrate that he has received more than the process to which he was due. I need to correct a few misstatements that were made here this morning before I begin in addressing. I believe on page 3195, and I cannot say this with 100% certainty, but I believe that that was the testimony of Michael Joseph Grimaldi. I do not believe that co-defendant Michael Permanian testified in this case. Secondly... At all. At all. Right. And that is correct. So, that was a huge misstatement. There has never been any testimony that the purse was snatched from the victim's hand. Ever. What Joseph Grimaldi testified was that Michael Permanian told him that the defendant was unable to get the purse from the victim. Now, that does not require the presumption as the defendant has made and continues to make that there was a struggle over the purse. That only requires the acceptance of the fact that the crime unfolded in such a way that the purse wasn't taken. And the theory over the struggle of the purse is actually refuted by the evidence introduced at trial. As this court correctly recognized, the defendant contends that there was forensic evidence introduced at trial of a struggle. There was no forensic evidence. That's on page 15. 15 of his brief. The forensic evidence in this case showed that the victim came in close contact with her assailant or assailant. In point of fact, there was... And the state itself argued that Mr. Kleiner grabbed the victim's hair, had contact with the victim's car and possessions, and was in close contact with the victim. In truth, the forensic evidence establishes that there was no struggle. There were three minor testimonial statements about a struggle. But let's go through the forensic evidence first. The victim's position in the car. She's in the driver's seat. She slumped over to the passenger seat. She has her purse on her chest. She has bullet wounds to the side, left side and left front of her head. The purse has bullet holes through it because there wasn't a struggle for the purse. She's holding it up to prevent the defendant from trying to deflect those shots. The direction of the entry of the wounds is down. The medical examiner testified that the shooter was standing over the victim. The close-range firing, there was one of the five bullet wounds had a, and I quote the medical examiner, a scant amount of stippling around the wound. So that wound was fired from a distance not closer than 18 inches, not greater than 24 inches. But the other four shots weren't, there was no evidence of stippling. So he's farther away. Is there some evidence in the record that this was a rifle? It is, it was called a 22, the, we don't know the exact weapon, but the 22 caliber long rifle bullets that the defendant used to murder the victim could be fired out of a rifle, it could be fired out of a number of weapons the ballistic examiner testified to. But we do know that during the firing and conceivably it would have to be early on because she could have run away, the gun jams. So the defendant has to take his hands, clear the jam and then continue to fire. So with all of these things, the shell casings now are at the rear of the car, four to six feet from the victim. There is simply no evidence that the defendant ever got close enough, no forensic evidence, to have any kind of struggle. Now the testimonial nature of the evidence. Three pieces of testimony. Joseph Rinaldi testified that he, when he was planning this murder with Michael Permanian and Ronald Kleiner, he told them he wanted it to look like a botched robbery attempt. That doesn't mean that there was going to be a struggle for the purse because it wasn't a real robbery. It was an assassination. So the next thing is Michael Permanian, as I said, tells Joseph Rinaldi that he couldn't get the purse out of her hand and it looked like one of the shots may have hit it. We don't know where Michael Permanian was, what he saw, or anything. He never testified. The last bit of testimonial evidence is the defendant's statement to his uncle, John Appell, that he grabbed the victim by the hair. Now this is Appell's memory of a statement made eight years earlier. The defendant is a known braggart and when he reenacted that shooting for all of those other people, he never once showed somebody grabbing her hair and the medical examiner testified that the victim had no areas of what she called traumatic alopecia, which is caused by pulling hair. So there is no forensic evidence of a struggle. There is weak testimonial evidence that's refuted by the known facts. So that is why every court that has decided this issue has determined that this hair evidence is a red herring. Microscopic comparisons done in 1993 on almost all of the hairs found anywhere on her and I think that it's important to remember a couple of things. This is the dead of winter. Everybody testified that it was cold that night. The victim is wearing a blouse, a sweater vest, a jacket over the vest, jeans, shoes, and socks. Many of these hairs come from the blouse, the sweater vest. That's all underneath the sweater jacket that she was wearing over it with her gloves. So even if there were a struggle, the chances of any hair getting on the blouse, on the sweater vest, on the shoes and socks, and the defendant is asking for all of this hair to be tested now. It's so remote that that's why every court, Judge Tobin who heard these requests twice, Judge Urso who heard these requests twice, this court that has heard this now the second time this court has heard this request, has repeatedly insisted that none of this hair evidence is relevant and none of the DNA tests that the defendant could do could significantly advance his claim of actual innocence. And the defendant standing up here today and saying that he needs a hearing in order to establish the relevance, no. The statute requires that he establish the relevance of the requested tests before he gets them. The Brown case that you cited as an emergency motion didn't give him the tops here. So how does that help you? Oh, the Brown case demonstrates what we argued in the last appeal and what this court found. 116.3 doesn't, I'm sorry, I misspoke. This court didn't find it because in the last appeal, and this goes to the defendant's request for a hearing, he withdrew the request for the hearing on oral argument. But what the state argued in its brief and what is correct and what the Brown case shows among other things is that the grant of a 116.3 motion and the receipt of testing does not mean that a defendant gets a hearing of any sort. The defendant has to file a petition under the Post-Conviction Hearing Act under 214.01 claiming actual innocence and it's those procedures that determine whether the defendant gets a hearing. For example, in this case, the defendants had a post-conviction petition pending when he had those 2003, those earlier DNA tests done. His attorney didn't amend that petition to claim a claim of actual innocence based on the DNA tests. And why? Because those DNA tests didn't establish his innocence. Those DNA tests established that the microscopic comparison correctly determined that the two hairs on the gloves weren't the defendant's. And the microscopic comparison tests established that the vast majority of the hairs found on the victim, everything but the one hair on the jacket outside, every other one of those hairs was consistent with the victim's. So we have no third party here. No evidence that there was any except for that one hair. The defendant requested nuclear DNA testing, if it was possible, STR DNA testing on that one hair in 2004. Judge Tobin denied it. This court affirmed that denial. Collateral estoppel precludes the defendant from asking for that same testing. In fact, the defendant is collaterally estopped from asserting that this hair evidence could be materially relevant because in the last appeal this court found that no DNA testing of any evidence which the defendant wanted could possibly have any impact given the overwhelming evidence that was introduced against the defendant at trial. Given the way that all of that testimony Joseph Rinaldi, Tammy Bahena, John Appel Did you argue collateral estoppel? Yes, Your Honor, we did. On page I'm sorry. I remember the line was this decision which must be  no matter how much evidence the defendant has. All right. So it's in here somewhere. Yes. Along that line of that statement you just made. Yes, Your Honor. All right. You can continue. If you'll forgive me I just want to make sure that I've reached So the statute requires that the defendant's evidence significantly advance. That's how the Supreme Court has interpreted materially relevant evidence. Significantly advance. What the defendant has conceded to you today is we don't know what this evidence is going to show. Well, that's not enough to qualify for testing under the Act. In terms of the defendant's claim that he needs a hearing, that he's been deprived of an opportunity for a hearing, the people state that this is also an utter misstatement of the truth. The defendant's brief on page 23 contends that what Judge Urso in this case ignored and what the state conveniently forgot is that the circuit court had already ordered a Dodd's hearing at the state's Supreme Court.  this is on page 24 of the results of the 2003 DNA test, which Judge Tobin told Allen Sincox during the last proceedings that I told you when I granted you this request that it wasn't going to be enough for anything more. If this just came back, these tests came back and they excluded the defendant. That is on page in the supplemental record for appeal number 053150 at page 134. So not only did she not grant it, she explicitly explained to the defendant why he didn't get it. What the defendant has conveniently ignored is that he had the opportunity for that hearing, but he voluntarily, knowingly, and intelligently relinquished that opportunity twice. He withdrew his request for a hearing before Judge Tobin and then he was concerned that what defendant was going to do is exactly what he's done now, which is come back with another pro se motion. And they asked counsel explicitly, are you sure? And he said to the court, yes, I'm sure, I've spoken with the defendant for an hour and a half, he hasn't relinquished any right to a hearing, which he never really had, because he's never filed the proper motion for this, and because the 2003 mtDNA tests were simply consistent with the 1993 microscopic analysis test. So he hasn't produced anything materially relevant, he hasn't followed the correct procedure to get a hearing, and he relinquished any hearing. He has received all the process that he was due, and for this reason this court should affirm Judge Urso's determination that he is not entitled, was not entitled, and is not entitled to any Dodd's hearing. In terms of the evidence, very briefly Your Honor, the testing, I would say that the defendant has been unable because of the mountain of evidence to establish and the lack of any real evidence of a struggle, regardless of whether this testimony came out about a potential struggle in the state's case. Any real material relevance to this case, that he is collaterally stopped by this court's previous decision, and that in addition he should be barred by race judicata and waiver. And I will admit that the assistant state's attorney in her motion to dismiss below did not mention race judicata or waiver by name. And in light of this court's opinion in the 2005 and 2007 appeals where this court discussed whether or not waiver and race judicata would apply in this situation and ultimately determined that it need not reach that issue, the assistant state's attorney might have believed that she couldn't. But she did tell Judge Erso all about your prior opinion in the 2005 and the 2007 cases. And she did talk about the tests the defendant requested before and that this court found that nothing he could do would provide materially relevant evidence. Based on that, this court should find that race judicata bars the defendant from asking for the same evidence he asked for mitochondrial DNA in 1999 on everything. The court denied it as of except for the two hairs on the glove. He could have asked for the victim's hair standards to be compared to those two hairs at that time. He didn't because he wanted to be able to claim actual innocence after that and if they matched he couldn't. What is he asking for now? Microscopic comparison of all the hairs to see if any of them have roots. He's not entitled to it. He had that already and the report that he has doesn't indicate that there are any roots and the Assistant State Attorney argued that if there had been roots it would be in the report. Number two, he wants to be able to compare the victim's hair. The only way he can do that is mitochondrial DNA because you can't compare nuclear DNA and mitochondrial DNA and since the two hairs on the gloves were done from mitochondrial DNA because there was no root there and just so this Court knows, one of those two hairs was entirely consumed by that testing. It doesn't exist anymore. So the only way he can compare one of the victim's hair standards with those two hairs is to do mitochondrial DNA again and he needs to do that in order to prove a redundancy theory on all of it. Well the defendant asked for mitochondrial DNA in 2001. It was denied and he didn't appeal it so he should be barred from asking for that and in the 2004 case he asked for the SDR DNA on that one hair on the sweater jacket. It was denied by Judge Tobin. This court affirmed it. We do have a statute in Illinois. It is to protect those defendants who actually are defendants who    and we are doing our best to protect them. We do have testimony suggesting there was a struggle there and we do have testimony suggesting there was a struggle there and we do have testimony suggesting there was a struggle there and we do have testimony suggesting there was a struggle there and we do have testimony suggesting there was struggle there. Sergio, I agree that if the forensic evidence shows that there is a struggle then when we plant the facts that we found here we needed to have a  I don't know whether Mr. Kleiner withdrew the hearing, the Dodds hearing. I think that's not a fair characterization. What Mr. Kleiner's position is and always has been is we shouldn't have a Dodds hearing before we've resolved the testing issue. It made no sense to have a Dodds hearing and he agreed to hold it in abeyance until all the testing is in. And that should be the court's ruling today. We should permit the testing, the STR and the CODIS testing and then have the Dodds hearing. He did not say then or ever that he just didn't want a Dodds hearing. The Brown case proves our point. In the Brown case they did further testing and they got a match. They found out whose DNA was in the victim. In that particular case it   in the victim's DNA. And therefore shed no light on the theory about the rape murder that was committed in this crime. But the reason I say it proves our point is because science had the possibility of answering whose DNA it was and the courts and the state were not able to answer the question. The STR testing allows us to answer the question about whose hair they are. Then we don't have to argue about whether it's consistent or not. Let's get the answer. Collateral estoppel, your honors, they did acknowledge on page 29, footnote 4 of their brief that they did not raise it and that is a procedural bar. That's footnote 4, page 29. The fact is they're the ones who should be estoppeled. The state has previously argued that Kleiner should get the dox hearing and they're reversing course here. But I just want to take a step back on the doctrine of collateral estoppel and it doesn't apply here. We're talking about different testing, we're talking about testing on hairs, an argument that has not been made, and the very nature of this statute contemplates that there's going to be successive requests. In five years I may be in front of your honors again if there was new technology that could provide insight then this statute does not have a requirement that if you've asked once you have to stop asking. This statute contemplates that as technology advances requests might change. So the MT DNA, the mitochondrial DNA request that went before and what the court said about those have no bearing on what's before today because what's before you today is the possibility that we can know whose hair those were. The last point then your honors is specifically with regard to which pieces of evidence. The hairs on the glove, if they match the hairs on the sweater jacket, if they match the hairs on the inside of the clothing. Remember this is according to some people supposed to look like a botched robbery. I don't know the answer to those questions. I think this is my last point. I think the state got it wrong when they said the fact that we don't know what that testing is going to show means we can't win. Quite to the contrary. All we have to show is the potential for a result that will materially change the outcome. Clearly if all those hairs on the inside of the clothing, on the outside of the clothing, on the glove, on this cold February night, if they create a profile of someone other than the people who the state honestly and genuinely believes is the killer, then that does have the potential for a new outcome. The state offers their opinion that he's guilty and we should all stop talking about it, then what is the state afraid of? This is testing we'll pay for. This court should be open to requests for DNA testing. There is no downside. There is no downside. If they're correct, Mr. Kleiner's hair would show up on the victim. Let's find out whose hair it is. The case will be taken under